UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EDNA KELLY,

          Plaintiff,

                                Case No.: 07-80434-CIV-MARRA

v.                                    Magistrate Judge Johnson

CIGNA LIFE INSURANCE COMPANY
OF NEW YORK,
a foreign corporation;

          Defendant.

_____/

## PLAINTIFF'S MOTION TO COMPEL RESPONSIVE ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS AND MEMORANDUM OF LAW IN SUPPORT

Plaintiff, Edna Kelly, by and through undersigned counsel and pursuant to Rule 37, Fed.R.Civ.P., hereby files her Motion to Compel Responsive Answers to Interrogatories and Production of Documents against the Defendant, Cigna Life Insurance Company of New York (hereinafter "CIGNA"), and for an award of expenses, including attorney's fees, and as grounds states:

1.  Plaintiff, Ms. Kelly, filed suit against CIGNA for wrongful denial of her long-term disability benefits.

2.  Ms. Kelly served her Requests for Production and Initial Interrogatories to Defendant on August 29, 2007.

3.  On October 16 and 18, 2007, Defendant provided insufficient responses to Plaintiff's Requests for Production and Initial Interrogatories, respectively.  In addition to a "General Objection" to producing "any information that is outside the claims file" and therefore responding to Plaintiff's specific requests by referring her to the claim file without more, the

Defendant objected to providing clearly relevant information as irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.[1]

4.   By letter dated October 23, 2007, Plaintiff's counsel addressed Defendant's inadequate and incomplete discovery responses, including explaining that discovery is not limited to the claim file since the policy at issue does not contain any discretionary language that would confer discretionary authority on CIGNA. (Ex. A)

5.   Since Plaintiff's October 23, 2007 letter, counsel for the Defendant requested discovery responses be addressed at a later date since she was inundated with work at that time.  Plaintiff's counsel cordially accommodated Defendant's counsel and delayed filing his Motion to Compel.

6.   Since then, Defense counsel has made no attempt to respond to Plaintiff's counsel requests for better responses to discovery.

7.   By letter dated April 1, 2008, Plaintiff's counsel again requested Defendant's counsel address Plaintiff's requests for better responses to discovery. (Ex. B)

8.   To this date, Defendant's counsel has not responded to Plaintiff's counsel April 1, 2008 letter.

9.   Moreover, only eleven (11) days ago in a case similar to the instant matter, the court considered the very same discovery issues raised by the very same counsel in ***Buchanan v. Life Insurance Co. of North America*, Case No. 6:07-cv-1008-Orl-19KRS (M.D. Fla. April 17, 2008).**  There, the court rejected opposing counsel's arguments and ordered further responses to Plaintiff's discovery requests.  A copy of the *Buchanan* Order is attached as Exhibit "C".

10. In spite of this recent Order on the very same issues, Defendant's counsel continues to resist discovery efforts and has not responded to Plaintiff's counsel requests for better responses.

---

[1] Defendant incorporated its "general objection" to each and every request for production and interrogatory.

11. The Defendant should now be ordered to comply with the Interrogatories and Requests for Production discussed in detail below.

12. As discussed below, Ms. Kelly requests this Court to award her the expenses, including attorneys' fees, incurred in preparing for and filing this motion.  Fed. R. Civ. P. 37(a)(4).

13. Counsel for Plaintiff hereby certifies that he has conferred with counsel for Defendant in a good faith effort to resolve the issues raised in the foregoing Motion to Compel, but has been unable to do so.  S.D. Fla. Local Rule 7.1(A)(3).

WHEREFORE, Plaintiff, Edna Kelly, respectfully requests this Court to enter an Order compelling Defendant to comply with Plaintiff's Motion to Compel Responsive Answers to Interrogatories and Production of Documents and for costs and attorney's fees associated with this Motion.

*Respectfully submitted,*

/s/ Kirk W. B. Wagar
EDWARD P. DABDOUB (FBN. 0045685)
eddiedabdoub@bellsouth.net
KIRK W. B. WAGAR (FBN. 994936)
kwagar@bellsouth.net
WAGARFEIT PA
3250 Mary Street, Suite 302
Coconut Grove, Fl 33133
Telephone: 305 443 7772
Facsimile: 305 443 1969
Attorney for Plaintiff Edna Kelly

## MEMORANDUM OF LAW

### I.  BACKGROUND

Ms. Kelly was employed at Carl Zeiss, Inc., as a Regional Sales Manager.  She was an eligible participant of the Group Long-Term Disability Policy (the "Policy") at issue (Policy No.

NYK-2219).  CIGNA, who terminated Ms. Kelly's claim for long-term disability benefits, insures and administers the Policy.

Ms. Kelly suffers from numerous conditions, including but not limited to, multiple chemical sensitivities, osteoporosis, degenerative disc disease, psoriatic arthritis, fibromyalgia, metabolic bone disease, and vertebral compression fractures, which prevent her from performing the material duties of **any** occupation.  In 1995, Ms. Kelly notified CIGNA she was disabled under the terms of the Policy and her claim for long-term disability benefits was approved effective October 26, 1995.  CIGNA has since recognized Ms. Kelly's disability from performing the material duties of **any** occupation and has authorized payment of a monthly disability benefit for approximately **eleven (11)** years.  Ms. Kelly has also been deemed disabled by the Social Security Administration and receives Social Security Disability Income benefits.

After acknowledging Ms. Kelly's disability and paying benefits for over 10 years, the Defendant terminated Ms. Kelly's long-term disability benefits without any change in her permanent and well documented illness.  Ms. Kelly's' claim was terminated effective January 26, 2006.  Despite fully favorable medical records establishing Ms. Kelly continued to remain disabled from any occupation, including the consistent opinions of her physicians, the rationale offered by the Defendant for terminating her claim in its January 27, 2006 letter was that "the evidence in your claim file does not support your inability to perform any occupation".

By letter dated November 1, 2006 counsel for Ms. Kelly appealed CIGNA's wrong decision.  Included with the appeal letter were letters from Ms. Kelly's treating physicians addressing Defendant's findings, and opining that Ms. Kelly remains unable to work in any occupation.  CIGNA, however, refused to reverse its decision and upheld its decision to terminate Ms. Kelly's benefits in its March 23, 2007 letter.

Following the commencement of this action to recover disability benefits, Ms. Kelly served discovery on CIGNA on August 29, 2007, and Defendant continues to avoid addressing Plaintiff's assertion that Defendant's responses are inadequate and incomplete.

It is inconceivable that the Defendant continues to stall Plaintiff's discovery efforts and refuses to produce documentation or better answers that are necessary for Plaintiff to analyze (1) how the CIGNA, as the fiduciary, reached its decision in Ms. Kelly's claim, (2) the nature of the information considered in making the decision, (3) whether Plaintiff has met, and complied with, the minimum requirements for employee benefit plan procedures, and (4) what extent the Defendant operated under a conflict of interest in deciding to terminate this valid claim.

CIGNA's counsel is well aware of the requirements to produce the responses requested, but is stubbornly litigious ad nauseam in this case as well as others she has against this firm. Forcing Plaintiff to file a nearly exact Motion to Compel is a waste of judicial economy and is an impediment to narrowing the underlining issues and resolving this suit.

## II.  DEFENDANT'S GENERAL OBJECTIONS TO PLAINTIFF'S DISCOVERY

Defendant asserted the following general objection in its Signed Responses to Initial Interrogatories and Responses to Plaintiff's Requests for Production:

> Defendant objects to producing any information that is outside of the claims file on the basis that this matter is governed by 29 U.S.C. §§ 1001 *et seq.* ("ERISA") and based upon the standard of review discovery is limited to the claim file. Accordingly, any information beyond the claims file is irrelevant and not likely to lead to the discovery of admissible evidence.

> This general objection is incorporated herein to each and every request for production [interrogatory] that seeks any information beyond what is contained in the claims file.

> The Defendant is wrong.  First and foremost, Defendant's general objection was outright

rejected in ***Buchanan v. Life Insurance Co. of North America***, **Case No. 6:07-cv-1008-Orl-**

**19KRS (M.D. Fla. April 17, 2008)** where the court GRANTED Plaintiff's motion to compel further responses to many of the very same discovery issues at issue here; holding that "under liberal discovery rules, Buchanan is entitled to discover information that is relevant or might lead to the discovery of admissible evidence". <u>Buchanan</u> at 2.

Second, discovery in ERISA cases are not limited to the claims file, especially where, as here, the Court will review the denial of benefits under a *de novo* standard of review since the Policy does not contain express language that would grant CIGNA discretionary authority to determine eligibility for benefits or to interpret the terms of the plan.[2]

Implied in Defendant's general objection is the assertion that the applicable standard of review is some form of the arbitrary and capricious/abuse of discretion standard, as the Eleventh Circuit has unequivocally held that a district court conducting a *de novo* review of an administrator's benefits determination is not limited to the facts available to the administrator at the time of the determination. <u>Kirwan v. Marriott,</u> 10 F.3d 784, 790 (11th Cir. 1994) ("This Circuit and the Third Circuit have squarely held that de novo review includes facts not before the administrator") (citations omitted), <u>Moon v. American Home Assurance Co.</u>, 888 F.2d 86 (11th Cir. 1989), <u>Luby v. Teamsters Health, Welfare and Pension Trust Funds</u>, 944 F.2d 1176 (3d Cir. 1991), <u>Grant v. Provident Life & Accident Insurance Company</u>, 2001U.S. Dist. LEXIS 21557 (S.D. Fla. June 27, 2001).

The decision to deny benefits under an ERISA plan is evaluated under varying standards of review, depending on the express terms of the plan and factual circumstances of the case.  The "default" standard is "*de novo*."

> Consistent with established principles of trust law, we hold that a denial of benefits challenged under §1132 (a)(1)(B) is to be reviewed under a *de novo*

---

[2] See the Long-Term Disability Policy attached as <mark>Exhibit D</mark>.

standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. _Firestone Tire & Rubber Co. v. Bruch_, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed. 2d 80 (1989); accord, _Brown v. Blue Cross & Blue Shield_, 898 F.2d 1556, 1559 (11th Cir. 1990).

The "burden of proving" that the plan contains the requisite discretionary authority is on the plan administrator and any "ambiguity in the wording of the policy should be resolved against [the insurer]". _Kinstler v. First Reliance Standard Life Ins.Co._, 181 F.3d 243, 252 (2nd Cir. 1999); accord, Kearney v. Standard Ins. Co., 175 F.3d 1084 (9th Cir. 1999). The terms of a plan that are required to provide discretionary authority to a plan administrator must be stated in "**express language**" that "is **unambiguous in its design** to grant discretion regarding entitlements to the fiduciary or administrator." _Kirwan_, 10 F.3d 784, 789 (11th Cir. 1994)(emphasis added)(holding that the language: "the trustees have the final authority to determine all matters of eligibility for the payment of claims," is insufficient to grant discretionary authority to the administrator).

"Contrary to the argument of the insurance company that discretionary authority can be implied from the plan, the circuit courts which have found that particular ERISA plans granted discretion to plan administrators or fiduciaries, in cases decided after Firestone, have uniformly rested this finding upon **express language** of the ERISA plan before them. Indeed, this court has recently stated that the 'discretionary authority' to which Firestone refers must be **'expressly give[n]'** by the plan. Guy v. Southeastern Iron Workers' Welfare Fund, 877 F.2d 37, 38-39 (11th Cir. 1989)(finding requisite grant of discretionary authority where plan stated 'full and exclusive authority to determine all questions of coverage and eligibility' as well as 'full power to construe the provisions of [the] Trust' belonged to trustees); see also, Batchelor v. Int'l Broth. Of Elec. Workers Local 861 Pension & Retirement Fund, 877 F.2d 441, 443 (5th Cir. 1989)(grant of discretion found when plan stated 'full and exclusive authority to determine all questions of coverage and eligibility . . . [and] full power to construe the provisions' of the plan belonged to trustees); Boyd v. Trustees of United Mine Workers Health & Retirement Funds, 873 F.2d 57, 59 (4th Cir. 1989)(discretion found where plan expressly gave trustees power of 'full and final determination as to all issues concerning eligibility for benefits' and 'authorized [them] to promulgate rules and regulations to implement th[e] Plan'); Lowry v. Bankers Life & Cas. Retirement Plan, 871 F.2d 522, 524 (5th Cir. 1989)(plan's language that committee had authority to 'interpret and construe' plan and 'to determine all

questions of eligibility and status under the Plan' constituted grant of discretionary authority"; <u>Bali v. Blue Cross & Blue Shield Association</u>, 873 F.2d 1043, 1047 (7th Cir. 1989)."

<u>Moon v. American Home Assurance Co.</u>, 888 F.2d 86, 88-89 (11th Cir. 1989)(emphasis added).

The Carl Zeiss, Inc. group policy at issue here contains no discretionary language. Unlike other group insurance plans, there is no provision dedicated for the purpose of conferring discretion nor is there any discretionary language contained in the Plan's proof of loss provision that would grant CIGNA discretionary authority to determine eligibility for benefits or to interpret the terms of the plan.

In addition, even if this matter were governed by the arbitrary and capricious standard of review, the Eleventh Circuit is as equally clear that under such standard, the Court can only *look to the facts known to the administrator* at the time the decision was made to deny coverage. <u>*Jett v. Blue Cross & Blue Shield*</u>, 10 F.3d 1547, 1550 (11th Cir.1994) (citations omitted) (emphasis added). Such direction, which is well established in the Eleventh Circuit, is quite different from a limitation on the Court to only review *evidence in the claim file* as asserted by Defendant's general objection. Furthermore, courts have permitted discovery beyond the claim even though the arbitrary and capricious standard of review applied in order to evaluate numerous factors relevant to a claim like the one at hand, including, but not limited to, how the fiduciary reached its decision, whether the fiduciary was competent to evaluate the information contained in the record, and the nature of the information considered in making the decision. See <u>*Rosser-Monahan v. Avon Products, Inc.*</u>, 227 F.R.D. 695, 698 (M.D. Fla. 2004); <u>*Lake v. Hartford Life & Accident Ins. Co.*</u>, 218 F.R.D. 260, 261 (M.D. Fla. 2002); and <u>*Cerrito v. Liberty Life Ins. Co.*</u>, 209 F.R.D. 663 (M.D. Fla. 2002).

**III.PLAINTIFF'S REQUESTS FOR PRODUCTION AND DEFENDANT'S ANSWERS**

**Request number 3: Any and all claims manuals, training materials or guidelines which refer to the Defendants claims handling procedures regarding disability claims.**

**Request number 4: Any and all treatises, manuals, articles, memorandum and/or documents of any kind, nature or description which were used during the handling of Plaintiff's claim.**

*ANSWER (for # 3 & 4): Defendant objects to the production of the items requested as the request is overbroad in scope and time and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence. Defendant further objects as the requested documents are proprietary and confidential and cannot be produced absent the entry of an acceptable confidentiality order.*

The recent *Buchanan* Order found this information relevant and discoverable. *Buchanan* at 2.

The information sought is highly relevant in determining whether the Defendant has established and maintained reasonable claims procedures as mandated by Department of Labor rules and regulations concerning employee benefit plans. See 29 C.F.R. 2560.503-1. This includes the requirement that there CIGNA actually have administrative processes and safeguards to ensure consistent decision making in making Ms. Kelly's benefit determination. 29 C.F.R. 2560.503-1(b)(5). The information sought in these requests, which include medical texts, are particularly relevant in the case at hand because Ms. Kelly suffers from numerous complex disabling conditions such as multiple chemical sensitivities and fibromyalgia; therefore, it is necessary to examine whether those involved in making the decision to terminate Ms. Kelly's benefits had access to and/or used materials that would ensure they were capable of appreciating her illness, thereby ensuring consistent decision making. This information is also needed to determine whether CIGNA provided a "full and fair review" as required under ERISA § 503(2).

Even assuming arguendo that Defendant's discovery is limited to the administrative record, which it is not as discussed in Section II above, the administrative record consists of <u>all</u>

information in the possession of the Defendant that was utilized in reviewing Ms. Kelly's claim. This includes claims/training manuals, policies and medical texts related to Defendant's claim and appeal process as well as Ms. Kelly's complex health conditions.  Accordingly, the administrative record is any scrap of paper, electronic or hard copy, that relates to the claim, whether for or against the claimant, or reflecting administrative procedures/process used by the administrator, included in the Defendant's notes, chronologies, summaries, memos or communications.

Whether or not in litigation, under Department of Labor ("DOL") regulations 29 C.F.R. § 2560.503-1(g) (1977), the "pertinent documents" that are required to be produced to an ERISA plan participant or beneficiary are defined in their scope in the Preamble of the regulations.  In the Preamble to the regulations, the Department of Labor expressed its view that "the participant must be allowed to see *all* plan documents and *other papers which affect the claim*," and that includes the right of the participant to "review *pertinent documents relating to* the denial."  42 Fed. Reg. 27426, 27426-27 (May 27, 1977).

"Pertinent documents" are therefore "*all*" papers which affect or relate to the claim, and thus include documents or writings that relate to or reflect the claim investigation, procedures used, retention of "experts" or other reviewers, analysis performed, conclusions reached, and documents that reflect the decision making process including how evidence was weighed and treated and evaluated, relevant to the requirement of "reasoned and principled decision making." *See also*, 1998 ERISA LEXIS 24, pp.1-2 (Aug. 6, 1998) addressing 41 Fed. Reg. 36281 (Aug. 27, 1976) and "pertinent documents" under 29 C.F.R. 2560.503-1(g) ("[C]laimants must be provided access to **all** of the information present in the claims record, whether or not that information was relied upon by the plan in denying the claim and whether or not that information

was favorable to the claimant.  Such full disclosure. . . is what the 1977 regulation contemplated, [and] is necessary to enable claimants to understand the record on which the decision was made"); 29 C.F.R. § 2560.503-1(g)(1)(v)(A) (requiring plan administrator to provide written notification if "an internal rule, guideline, protocol, or other similar criterion was relied upon in making the adverse determination" and requiring the disclosure of such information upon request); 29 CFR 2560.503-1(h)(2)(iii) (requiring as part of a full and fair review of a benefit denial, disclosure of all documents "relevant" to a beneficiaries claim for benefits; a document is "relevant" as defined in section (m)(8)(ii) if, *inter alia,* it "[w]as submitted, considered or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination."). Section 29 C.F.R § 2560.503-1(m)(8)(iv) further requires that documents relevant to a claimant's appeal include: "In the case of a group health plan or plan providing disability benefits, constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis, without regard to whether such advice or statement was relied upon in making the benefit determination."

Consistent with the 1977 regulations, current DOL regulations clarifies the type of information a plan participant is entitled to receive.  The following sections of the DOL claims regulations provide specific guidance regarding the type of information that should be provided:

> h(3)(iv) provide for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, *without regard to whether the advice was relied upon* in making the benefit determination;

> i(5) *Furnishing documents.* In the case of an adverse benefit determination on review, *the plan administrator shall provide* such access to, and copies of, documents, record, and other information described in paragraphs (j)(3), (j)(4), and **(j)(5)** of this section as is appropriate.

**(J)(5)** In the case of a group health plan or a plan providing disability benefits-(i) If an ***internal rule, guideline, protocol, or other similar criterion*** was relied upon in making the adverse determination, either the specific rule, guideline, protocol, or other similar criterion; . . .

29 C.F.R. § 2560.503-1 (2000).

The regulations also mandate that claimants be provided with "all documents, records, and other information **relevant** to the claimant's claim for benefits." 29 C.F.R. § 2560.503-(h)(2)(iii). Among the materials/documents defined as "relevant" by 29 C.F.R. § 2560.503-1(m)(8)(2000) are those "***relied upon in making the benefit determination***", "submitted, considered, or generated in the course of making the benefit determination, without regard to whether [they were] relied upon in making the benefit determination", as well as those that "*demonstrates compliance* with the administrative processes and safeguards". (Emphasis added).

Additionally, in discussing the scope of the administrative record in the context of a government agency, the credibility of which should undoubtedly result in a more generous grant of deference and leeway, the Courts have stated the following. "In sum, the "administrative record" is defined as the "full" or "whole" record in existence at the time of the agency decision, and is *not* limited necessarily to those documents that have been compiled and submitted by the defendant in litigation as the purported 'administrative record' but "consists of all documents and materials directly or indirectly considered by the [] decision-makers." _Thompson v. U.S. Dept. of Labor_, 885 F.2d 551, 555 (9th Cir. 1989).

Even if the Defendant did not rely on particular claims and training manuals in making Ms. Kelly's claim decision, such documents can certainly lead to admissible evidence:

As a preliminary matter, even under the rule urged by Blue Cross, the Court's limitation would still include evidence that was available to the insurance company at the time of its decision. See _McMahan v. New England Mutual Life Ins. Co._, 888 F.2d 426, 431 n.1 (6th Cir 1989). Data published in medical journals or made available to Blue Cross before the time that the administrator denied

coverage was "available" to Blue Cross. Whether the administrator chose not to consider the information, was unaware of the information, or refused to research to find the information is immaterial. The information contained in those reports was available, and therefore, this Court may properly consider it.

*Sluiter v. Blue Cross & Blue Shield*, 979 F. Supp. 1131, 1139-1140 (E.D. Mich. 1997).

Finally, with regard to Defendant's claim of proprietary and confidentiality, by way of his October 23, 2007 letter, Plaintiff agreed to seek a court order prohibiting the use of documentation received outside the context of this suit.   Plaintiff also agreed in that letter to limit the scope of this request to the time period involved in Ms. Kelly's claim; specifically, from 1995, when Plaintiff initially filed her claim, to 2007, when Plaintiff was denied on appeal.  This time period is reasonable and necessary as Ms. Kelly's benefits were terminated though her health had not improved.

**Request number 8: A copy of the personnel files and qualifications of all persons involved in the claims analysis and denial of Plaintiff's claim.**

*ANSWER: Defendant objects to the production of the items requested as the request is overbroad in scope and time and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.  Defendant further objects as the requested documents are proprietary and confidential and cannot be produced absent the entry of an acceptable confidentiality order.*

This information is highly relevant in determining whether Ms. Kelly's claim was given a full and fair review, which includes her claim being handled by properly trained employees and reviewed by health care professionals with appropriate training and experience with Ms. Kelly's multiple conditions.

As discussed above, the Department of Labor regulations provide "for the identification of medical or vocational experts whose advice was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, *without regard to whether the advice was relied upon* in making the benefit determination".  29 C.F.R § 2560.503-1(h)(3)(iv).  This information

is also discoverable based on *Jett*, 10 F.3d 1547 (11th Cir.1994), as one would hope that the Defendant's selection of its medical consultants/reviewers was based in part on such individuals' resumes and qualifications and that such information was known to the Defendant at the time of Ms. Kelly's claim. If the Defendant never discovered such information when employing/utilizing individuals' expertise, then Ms. Kelly asks the Court to compel Defendant to state the same.

Additionally, whether known to the administrator or not, the qualifications of Defendant's reviewers/consultants are clearly relevant and discoverable no matter the standard of review in this case, that requires at the very least a reasonable basis behind Defendant's claim determination. Courts have recognized that the failure to incorporate medical expertise appropriate to the circumstances renders subsequent denials arbitrary and capricious. *Calvert v. Firstar Finance, Inc.*, 409 F.3d 286, 295-6 (6th Cir. 2005), *Kunin v. Benefit Trust Life*, 910 F.2d 534, 538 (9th Cir. 1990) (no indication in the record that the doctors with whom the medical director consulted had any significant experience with or particular expertise concerning autism), *Zavora v. Paul Revere*,145 F.3d 1118, 1122-1123 (9th Cir. 1998) (improper to have relied on a physician without relevant expertise instead of opthamologist regarding a thorn injury to the eye).  A number of Florida courts have also recognized the need for discovery of certain types of information in ERISA cases such as the competency/qualifications of the claims administrator, as necessary to determine any conflict of interest that may exist.  *Cerrito v. Liberty Life*, 209 FRD 663, 664 (M.D. Fla. 2002) held that limited discovery was available, "even in instances in which an "arbitrary and capricious" standard applies, in order to assist the court in evaluating whether the fiduciary was competent to evaluate the information in the administrative record, how the fiduciary reached its decision, or whether, given the nature of the information in the record, it was incumbent upon the fiduciary to seek outside technical assistance in reaching a

"fair and full review" of the claim. Similar cases followed, including _Woodward v. Reliance_, No. 1:02-cv-64 MMP 2003 WL 1798519 (N.D. Fla. Mar. 10, 2003), Lake v. Hartford, No. 8:03-cv-237-T-26EAJ (M.D. Fla. Oct. 7, 2003), and _Featherston v. MetLife_, No. 3:03 CV 392/RV/MD (N.D. Fla. Aug. 30, 2004).

Thus, in further litigating her claim against CIGNA, Ms. Kelly is entitled to discover the qualifications and any expertise of the medical consultants/CIGNA employees that made workability determinations based on the Plaintiff's medical records which discussed her very specific medical conditions, including chemical sensitivities and fibromyalgia. [3]

Further, Plaintiff contends CIGNA terminated her benefit in reliance on the reports of reviewing doctors whom CIGNA paid, and therefore, are financially dependent on CIGNA and prejudiced to provide opinions that claimant's are not disabled.

**Request number 9:  Any individual, personal or desk files, activity logs or diary notes of the adjusters handling Plaintiff's claim.**

_ANSWER: Defendant objects to the production of the items requested as the request is overbroad in scope and time and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence._

As fully discussed in the argument enunciated in response to Defendants' objections to Requests nos. 3 and 4, this information is relevant and discoverable.   Moreover, this request seeks exactly the type of documentation the Department of Labor regulations deemed "relevant"; specifically, those "relied upon in making the benefit determination" as well as those "submitted, considered, or **_generated_** in the course of making the benefit determination, **_without regard to whether [they were] relied upon_** in making the benefit determination".  See 29 C.F.R. § 2560.503-1(m)(8)(2000).  Only nine (9) days ago, the Eleventh Circuit cited 29 C.F.R. § 2560.503-1 and articulated that "all relevant documents generated during the review and initial

---

[3] Plaintiff made clear she was agreeable to seeking a court order limiting the use this information to this lawsuit.

claim determination had to be produced to the claimant". *Glazer v. Reliance Std. Life Ins. Co.*, 2008 U.S. App. LEXIS 8583, 6 (11th Cir. Fla. Apr. 21, 2008).

**Request number 20: Any and all documents which refer to, relate to and/or otherwise evidencing Defendant's compliance with ERISA and/or the Secretary of Labor Regulations regarding <u>claims</u> procedures.**

**Request number 21: Any and all documents which refer to, relate to and/or otherwise evidencing Defendant's compliance with ERISA and/or the Secretary of Labor Regulations regarding <u>appeal</u> procedures.**

**Request number 22: Any and all documents which refer to, relate to and/or otherwise evidencing Defendant's compliance with ERISA and/or the Secretary of Labor Regulations regarding summary plan and plan documents.**

*ANSWER: Defendant objects to the production of the items requested as the request is ambiguous, overbroad and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*

It is implausible that learned counsel for the Defendant objects to these Requests as "ambiguous, overbroad and irrelevant" where they seek information limited to whether the Defendant has established and maintained reasonable procedures governing <u>claims</u> and <u>appeals</u>, and whether the determination made in the claim at issue was done in accordance with the governing plan documents as ERISA requires. The Department of Labor rules and regulations *specifically* provide for the production of this information to beneficiaries and participants of ERISA plans. See 29 C.F.R. 2560.503-1(b) and (f)-(g), and 2560.503-1(h),(i) and (j).[4]

**Interrogatory number 4: Please describe with particularity the investigation Cigna conducted of Ms. Kelly's claim prior to issuing its First Denial Letter.**

**Interrogatory number 5: Please describe with particularity the investigation Cigna conducted of Ms. Kelly's claim during the appeal.**

**Interrogatory number 6: With regard to Plaintiff and Plaintiff's claim, please state the name, address, position/job title, employer and phone number of any doctor, nurse, vocational rehabilitation/occupational counsel and/or any other health or vocational professional (other than the Plaintiff's treating physicians) who rendered a report or**

---

[4] In regard to this Request being over broad, Plaintiff's counsel indicated in his October 23, 2007 letter that the response may be tailored to the time period pertaining to this claim (1995 through 2007).

opinion to Defendant, examined records for the Defendant, or examined Plaintiff for the Defendant at any time.

**Interrogatory number 7: For each person identified in interrogatory No. 6, please identify the nature and breadth of their position(s) at Cigna, including without limitation job description, duties, responsibilities, tasks, salary, benefits, employment contracts and other incentive/bonus programs.**

**Interrogatory number 14: Please identify with particularity, each and every attempt by the Defendant to contact any or all of Ms. Kelly's treating physicians in order to discuss or evaluate his claim for benefits under the Policy.**

**Interrogatory number 15: List all documents which were reviewed in the determination to terminate the Plaintiff's long term disability benefits.**

**Interrogatory number 16: Please describe with particularity any vocational assessments or reviews you have conducted of Ms. Kelly's occupation, including the dates, the places, and the findings of that vocational assessment or review.**

*ANSWER (for #s 4, 5, 6, 7, 14, 15, & 16): Pursuant to Rule 33(d) of the Federal Rules of Civil Procedure, Defendant refers Plaintiff to the claims file produced in response to Plaintiff's first request for production of documents.*

Defendant answered the above interrogatories by referring Ms. Kelly to the enormous claim file without further explanation or direction.  The burden of ascertaining the answers is not the same for Plaintiff as for Defendants.  Indeed Rule 33(d), Fed.R.Civ.P., gives a party the option of producing records to answer an interrogatory, <u>but</u> to constitute a sufficient answer, a party may only produce records "[w]here the answer to an interrogatory may be derived or ascertained from the business records. . . ***and***  the burden of deriving or ascertaining the answer is substantially the same for the party serving the Interrogatory  as for the party served."  Rule 33(d), F.R.C.P., (*emphasis added*).  Local Rule 26.1(G)(8)(a), gives further guidance of how producing a document will be considered a sufficient answer:  "a specification of documents to be produced shall be in sufficient detail to permit the interrogating party to locate and identify the records and to ascertain the answer as readily as could the party from whom discovery is sought."  <u>Id</u>.  If the party gives an evasive or incomplete answer to an interrogatory, the answer is

treated as a failure to answer.  Rule 37(a)(3), Fed.R.Civ.P.  Simply referring Ms. Kelly to the

claim file to answer a question does not comply with the spirit, intent or language of the Federal

Rules of Civil Procedure.

In addition, it is particularly evasive to refer Ms. Kelly to the claim file for Interrogatory

numbers 7, 14, and 15 as the information sought is not necessarily found in the claim file.  For

instance, with regard to Interrogatory 7, the job description, duties, responsibilities, salary, and

other incentive/bonus programs of doctors or nurses that rendered a report or opinion to

Defendant or examined Plaintiff cannot be ascertained solely from the administrative record.  As

explained above, CIGNA terminated Ms. Kelly's benefit in reliance on the reports of reviewing

and examining doctors whom CIGNA paid, and therefore, are financially dependent on CIGNA

and prejudiced to provide opinions that claimant's are not disabled.

**Interrogatory number 8: Please identify what procedures, if any, Cigna has in place to comply with its fiduciary obligations under 29 CFR 2560.503-1(b)(5) to treat similarly situated claims "consistently".**

*ANSWER: Defendant objects to this interrogatory as the information sought is overbroad and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*

As indicated by the Interrogatory itself, CIGNA, as a fiduciary of Ms. Kelly's claim, has

an obligation under ERISA to have in place procedures to ensure similarly situated claims are

treated "consistently", thus discovery regarding whether the administrator has applied its policies

**consistently** is not irrelevant.  29 C.F.R. 2560.503-1(b)(5).  These procedures as well as all

decisions must be uniformly and consistently applied to all participants in similar circumstances;

i.e., those suffering from the same or **similar** ailments as Ms. Kelly.  Therefore, the

reasonableness of CIGNA's interpretation of plan provisions depends, in part, on whether the

provisions at issue have been applied consistently.  Furthermore, considering the complex nature

of Ms. Kelly's medical conditions, such as multiple chemical sensitivities and fibromyalgia, this

Interrogatory is extremely relevant to the issue of whether CIGNA met its fiduciary duties.

**Interrogatory number 9: List all treatises, medical journals, manuals, films, guidelines, articles, training materials, or any other documents provided to and/or made available for the handling of claims concerning Ms. Kelly's condition.**

*ANSWER: Defendant objects to this interrogatory as the information sought is overbroad and seeks documents that are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*

This Interrogatory seeks the same information as Requests nos. 3 and 4, to which the

Defendant also objected on the basis of overbroad and irrelevant.  Therefore, Plaintiff's

argument in response to Defendant's objections to Requests nos. 3 and 4 can be reiterated

verbatim with respect to this Interrogatory.

**Interrogatory # 11: Identify whether the compensation of any individual or entity identified in Interrogatory #1** [that asked Defendant to identify all individuals who processed/analyzed Plaintiff's claim to which Defendant simply referenced the claim file] **is directly or indirectly affected by the number or percentage of claims that are granted, denied or terminated.**

**Interrogatory #13: Were any of the individuals identified in Interrogatory #1 ever told, either orally or in writing, that he or she should increase the number or percentage of claims that are terminated?**

*Answer (for #11 and #13): Defendant objects to this interrogatory as the information sought is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.*

Again, on a pure evidentiary basis, such information is discoverable according to *Jett*, as

it was known to the administrator during Ms. Kelly's claim. Moreover, the information is clearly

relevant as Florida courts have dictated the need in ERISA cases to discover information that

would reveal a conflict of interest on the part of the Defendant claims administrator. *Cerrito*, 209

FRD 663, 664, *Woodward*, No. 1:02-cv-64 MMP 2003 WL 1798519, *Lake*, No. 8:03-cv-237-T

26EAJ, *Featherston*, No. 3:03 CV 392/RV/MD. The resumes/CVs of Defendant's medical

reviewers are also discoverable based upon the Department of Labor Regulations discussed

*infra,* specifically because such information is *pertinent* and *related* to Defendant's claim investigation, analysis and retention of experts.

Lastly, the <u>Buchanan</u> Order also directed a response to these very interrogatories. <u>Buchanan</u> at 2.

## IV. AWARD OF REASONABLE EXPENSES INCURRED

When a motion to compel is granted, it is mandatory for the court to require the party whose conduct necessitated the motion to pay the moving party's reasonable expenses incurred, including attorney's fees.  Fed. R. Civ. P. 37(a)(4).  Defendant's objections to Plaintiff's requests and interrogatories on the basis that they are over broad and irrelevant are completely improper because the discovery relates to Defendant's wrong and unreasonable termination of her benefits and is permissible under ERISA.

Further, it is untenable that Defendant continues to frustrate Plaintiff's discovery efforts, forcing this law firm to again file another Motion to Compel on the **same opposing counsel** on the **very same** issues, including Defendant's general objection. <u>Buchanan</u> at 2.  CIGNA's learned counsel is well aware of the requirement to answer the interrogatories and produce the documents requested, but perpetually stalls discovery.  Accordingly, this Court should award Ms. Kelly the expenses incurred in bringing this motion, including attorneys' fees.

## V.  CONCLUSION

For the foregoing reasons, Plaintiff, Edna Kelly, requests this honorable Court to enter an Order compelling Defendant, CIGNA, to provide better answers to its Initial Interrogatories and documents responsive to its Requests for Production, and to award Ms. Kelly reasonable expenses incurred in having to file this motion to compel, including attorneys' fees.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

EDNA KELLY,

        Plaintiff,

                                     Case No.: 07-80434-CIV-MARRA

v.                                        Magistrate Judge Johnson

CIGNA LIFE INSURANCE COMPANY
OF NEW YORK,
a foreign corporation;

        Defendant.

_____/

## <u>CERTIFICATE OF SERVICE</u>

      I HEREBY CERTIFY that on the 30th day of April, 2008, I electronically filed the

foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing

document is being served this day on all counsel of record or pro se parties identified on the

attached Service List in the manner specified, either via transmission of Notices of Electronic

Filing generated by CM/ECF or in some other authorized manner for those counsel or parties

who are not authorized to receive electronically Notices of Electronic Filing.

                                    BY: <u>s/ Kirk W. B. Wagar_____</u>
                                        KIRK W. B. WAGAR
                                        FL Bar No.: 994936
                                        WAGARFEIT, P.A.

**SERVICE LIST**
**KELLY v. CIGNA LIFE INSURANCE COMPANY OF NEW YORK**
CASE NO. 07-80434-CIV-MARRA/Johnson
United States District Court, Southern District of Florida


Sherril M. Colombo
scolombo@cozen.com
Cozen O'Connor
Wachovia Financial Center, Suite 4410
200 South Biscayne Blvd.
Miami, FL 33131-4332
Telephone: (305) 704-5940
Facsimile: (305) 704-5955
*Attorneys for Defendant Cigna Life Insurance Company of New York*
Via electronic filing




Kirk W. B. Wagar
kwagar@bellsouth.net
Edward Philip Dabdoub
eddiedabdoub@bellsouth.net
WAGAR FEIT P.A.
3250 Mary Street
Suite 302
Coconut Grove, FL 33133
305. 443. 7772
305. 443. 1969 facsimile
*Attorneys for Plaintiff Edna Kelly*
Via electronic filing